Case number 19-5088, Juan Luciano Mercado, Appellant, United States Department of State and Health. Assistant Attorney for the Appellant, Ms. Thompson, Mr. Shaw for the Appellant. Good morning, everyone. Your Honors, good morning. My name is Kel McClanahan. I am here on behalf of the Appellant, Juan Mercado Amadeus. With me at the table is his Dominican lawyer, Karina Perez, and the lawyer for the amici, Katie Thompson. Most of my argument today is going to be about big picture arguments. The parties have already briefed most of the issues in this case to a great degree of detail. And so I view my job here as basically answering any questions that you have interest in for whatever particular topics you're interested in. With that in mind, I'm going to jump sort of all around in the briefs to hit the topics that are sort of the most egregious examples of the problems with the district court opinion and the agency's position. What are the big picture issues in the case? This seems like a very narrow set of disputes about whether searches were adequate and remedies were exhausted given the way particular denial letters were framed. So there are three main big picture issues, one of which I'm not going to really touch on unless you really want to hear from me, and that is the foreseeable harm standard. I'm sorry, which? The foreseeable harm standard. That is what Ms. Thompson is going to primarily talk about. But the other two, one is the basic underpinning of the lack of evidence, the lack of what Judge Williams in the AFTRAC case called reasonable specificity of detail in declarations viewed on their own terms. This came up a lot in the search issues where in the case of the DEA, the only piece of evidence for why this one alleged system was likely to be the only one to contain records was a statement that we decided that this one system would be the only one likely to contain records. And the FBI. Sorry. Not the only one. They did say the only one. No, the system that any responsive records would likely be in that system. Right. That, okay. There is, I see the distinction that you're making, Your Honor, and this is, we are not saying, nor really could we say, that if all the records are likely to be found in one system, they also have to look in other systems for duplicates of those records. We are saying that they can't limit it to the one most likely to contain records, and that if there are systems which are likely to contain records which are not in that one system, they have to search there. But the more fundamental question is we don't even have to get to that today because they did not provide sufficient specific evidence that why this one system would be the most likely to contain records. The underlying law, the big picture legal point on this is that the governing standard is reasonable search, not a perfect search. And the affidavit in this case says they determined all responsive information was reasonably likely to be found in this database. Right, and I would quibble with your statement that the standard is, because while what you said is a standard, that's not the standard we're focusing on. We're focusing on the burden of evidence. And a conclusory statement that... On the quantum of proof that the search is reasonable. Right, exactly. And that is what we're saying. It may turn out that were you to remand this as you did in the Institute for Justice case, they may provide more evidence explaining why this would be where all the likely records would be located, and then they win. We would even concede that perhaps. But they have not met that burden. The affidavit is a little bit thin, but the brief tries to shore that up by saying, and the problem when I just read the affidavit, the problem I thought of was, gosh, we don't know what's in this database. If we don't know what's in this database, can we assess that this is a reasonably targeted search? They cleaned up that problem in the brief by explaining what the database was by reference to Federal Register materials that are judicially noticeable. Your Honor... And it seems like it's perfectly targeted. It's a database with regard to their FOIA process. Right. And the problem is that reaching the legal conclusion that they have satisfied their burden here, even with that extra information, requires a leap to saying that there are not any records anywhere else that would not be in this system. And they simply, that may be true. We cannot get there from the evidence. You don't take issue with the judicial notice piece. We can consider the description of the database. Oh, you can totally, although I would add, as I clarified in one of the briefs, that Justice 004 isn't a database the way that most people think of that. It's a Privacy Act system of records, which is not a one server that has records on it. It's a descriptive of basically the equivalent of a room full of different files that's shared by different agencies. It is DOJ wide. Your argument on that left me scratching my head, because it certainly sounded as if your description of Justice 004 was as something much bigger than one might have supposed it to be, and that therefore, if they were searching it, all the more likely that they would find scraps that they wouldn't find searching a narrower, less than a room, a file cabinet rather than a room. Why isn't that a reasonable understanding? Because the system of records designation for Justice 004 is sort of like a stamp that you would put on a record, and there's no guarantee that they're all located together, they're easy to search at all. The EOUSA has a separate server that is part of Justice 004, but doesn't talk to the other servers, then DEA, then FBI, then what have you. And so the problem is that it's not broader in that it's not really a system or even a collection of systems, it's just a label. And so when you get down to the particular... We're talking about labels in the law. Right. The question is what is labeled, and then I guess what the agency does to find what is signified by the label. Right. And that goes to the second point that is relevant to this, which is that the U.S. government and DOJ has a long history of considering e-mails in e-mail systems to not be parts of systems of records under the Privacy Act. You cited a particular passage in district court, page 13 of your grave brief. Of my main brief? You cited a particular passage of a district court opinion for the proposition that this was a long-held DOJ position. I found no shred of that. Which brief are you talking about, the main brief or the reply? Reply. Oh, sorry. Page 13. It was a very striking thing to assert that DOJ had this long-held position, that this was... If I looked at that place, I would find how long-held it was. But I found nothing of the sort. You mean Krieger, the case? So that's not surprising, honestly. Because when I... I will be honest. When I said it's long-held, that's based on my own experience having litigated this. It doesn't generally get to the opinion stage where somebody talks about it. Yeah, well, it didn't seem to get to it there. Actually, with respect, it did. It said... So what's the language that I should be looking at? So on page 42 and 43 of that opinion, and I apologize, I don't have the opinion in front of me, Krieger was about whether or not emails can be searched. The fact that they can be searched by a personal identifier means that they are designed to be searched by a personal identifier. And that is the discrepancy that crops up a lot. And honestly, if you were to ask my colleague at DOJ, they could probably give you a more lengthy laundry list of places they've argued this. But system of records is a deeply complicated, nuanced, controversial part of the Privacy Act. And many Privacy Act cases have run aground of this idea that an email server is not part of a system of records, even though it might contain a bunch of records that would be considered part of a system of records. That you have to move emails into some other system before you can even think about putting the stamp on them of Justice 004. And that is the tension here. If they were to explain that in greater detail in a declaration, it might suffice. But again, this is coming back to the overarching problem of lack of evidence. But they say the Federal Register description of it is records. The system consists of records created or compiled in response to FOIA requests. Yes. And you say in your, before that Krieger site, you described the system as a generic term for the records maintained about FOIA requests across all of DOJ. And I did paraphrase, about. And the underlying request at issue seeks documents memorializing or describing the process of a FOIA request. Right. The request maps perfectly onto the system as they describe it in the Federal Register and as you paraphrase it at page 13 of the reply. The fact that this book contains notes about litigation does not mean that there aren't other books that contain notes about litigation in my library at home. That's the distinction that I'm trying to make here. The fact that it does say this system contains these records doesn't mean only this system contains these records. And while I do very much appreciate the distinction that you're seeing here, I, as a bit of a cop out, I admit, I would simply suggest to ask them that and you'll get an answer much like what I'm getting. So that's fair. You're saying back to me that I am maybe drawing an inference of comprehensiveness, which seems to me a fair one, but maybe not a compelled one from the sense that this is a system. It's not just some random room or file. Right. But then don't they tie that up with the affidavit, which says they determined all responsive information was reasonably likely? I mean, doesn't that suggest that the system is what one might think, which is a system, something comprehensive with respect to the FOIA stuff? Conclusory affidavits that parrot the statutory language or the case law language are never sufficient for summary judgment. That's straight out of Hayden versus NSA. And when the question before the court is was it reasonable, you can't rely on a statement that said we did a reasonable search or we made a reasonable determination. Trust us. And that's basically what this is saying. And it's saying for the same reason that the State Department had the same problem of just and I'll just finish on this sentence since I'm way past my time. Of saying, you know, these records are these records or these e-mails are indexed by request. They all include the request number. And I said they haven't offered any proof of that. In fact, here's one that doesn't have the request number in it. That's true. On the other hand, it is something that State discovered in the search of a file organized by number. And there was a reason why it turned up in that file. And it was that reason was not just someone was wandering around dumping things into a file. It was part of an exchange that was a chain e-mail or became a chain e-mail with the magic number in it. So, yeah, it's still it's not inconsistent with the proposition that the records are organized by request number. And it also, I mean, the episode that you pointed to with a sort of aha expression seems to suggest that that organization is reasonably close to effective or makes searching by request number reasonably close to effective. And, Your Honor, I would agree that this their search probably caught the lion's share of the records. That one in particular, if you think back sort of do a little hypothetical exercise and say, okay, well, what if they had not responded to that e-mail? And I was doing the sent e-mail. If they had not responded to that e-mail, it would be sitting in their inbox and would not have been located. Because their response was what put the name in it. So that's why agencies are supposed to do things like more than one search term. Look at what you're saying. You're talking about an e-mail that comes in. Apparently it never plays any roles. It's in some computer inbox. And nobody ever does anything about it. It seems to be a sort of non-thing and, I mean, a non-event certainly. And it's a little hard to expect an agency to collect all the non-events that may have sprung up about a particular request. With respect, Your Honor, if an e-mail exists discussing a request, it's responsive to a FOIA request. I understand. In a world of perfect knowledge, it would undoubtedly be turned over. We live in an imperfect world. And I concede that. And I don't think that they should do manually read every e-mail in the FOIA office. But I think that they should look for maybe Machado. Or Amadeus, if they got the name right. I went to school with a kid named Machado. And we studied history in which there were a lot of characters named Machado. I have the sense that it's not exactly a terribly rare name. I would argue that that is speculation. That it's not rare among FOIA requesters to the State Department. But it falls on them to do the search and say it was too broad. And then say that in a declaration by admissible evidence. Fair enough. All right. Why don't we hear from counsel for the media. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Amici Reporters Committee and 36 news media organizations sought to participate in this case to address, admittedly, what is a discrete issue but one of extreme importance to FOIA requesters generally. The foreseeable harm provision that was added to the act in 2016 is, I feel comfortable saying, the most consequential change to FOIA in decades. Prior to the 2016 amendments, an agency need only demonstrate that a record or information fell within the scope of a FOIA exemption in order to lawfully withhold it. That is no longer the case. My understanding is there's legislative history, for what it may be worth, saying that this was intended to make as a matter of law the practice followed by the Obama administration. So there's no question, Your Honor, that the foreseeable harm language came from an executive branch policy, a former Attorney General Holder's memorandum to Department of Justice, concerning when FOIA requests would be or when FOIA litigation would be defended by DOJ. There's no question it came from that. But a statutory mandate on the part of Congress has a very different effect. It is a statutory mandate requiring disclosure. That's what it means, right? Correct, Your Honor. And if it's modeled on a practice, one might suggest it's intended to embed that practice. That seemed to be what the legislative history was. So, I mean, a kind of obvious question is, has there been a falling off, or at least the facts accumulated here, did these represent a deviation from or falling off from the practice of the Obama administration? I think the question, the way I would frame it, Your Honor, is that the context of the FOIA Improvement Act of 2016, the reason Congress felt that such legislation was necessary was because, in fact, it needed to alter what Senator Grassley referred to as a culture of government secrecy. So I think the idea that they were simply trying to embed a practice because business as usual was working out perfectly fine is simply not bore out by the legislative history at all. And I think it would not make much sense. Congress clearly saw a problem, and the problem that they identified was overuse of exemptions that did not require withholding but permitted it by government agencies. Really, across the board, an increasing number of withholdings. They sought to change that culture from one of default withholding to one of default disclosure, one of transparency. And, therefore, they did that by mandating disclosure, absent a showing of foreseeable harm, assuming that disclosure is not otherwise prohibited by law. So this is really a sea change in FOIA. It was intended to be. It was intended not only to address too many withholdings but to address other problems as well because fewer withholdings means fewer litigation. The idea was to make a systemic change in FOIA. It's only a sea change with regard to documents that fall within the scope of an exemption but whose disclosure wouldn't harm the purpose of the exemption. That's correct. Why do you think that's the heartland as opposed to the fringe? I mean, if there is an exemption for documents whose disclosure would harm national security, you would expect that most documents falling in that category would undermine the purpose of the exemption if they were disclosed. And I think that cuts against really what Congress was looking to do. I mean, you are correct, absolutely, Your Honor. What this was designed to do was to prohibit agencies from relying on these exemptions where it technically fits, where the document technically falls within the scope of that exemption, but there would be no harm to the interests. For some odd, quirky fact, it's on the margin of the exemption, or there's some unusual fact in the case. I know they solved this problem by other means, but maybe it's a deliberative process document that's really, really old. But, I mean, those are sort of more peripheral applications. I don't think Congress would have worked for, on a bipartisan manner over the course of two years to address what it saw as problems on the fringes. I think it saw this as a critically important and major problem, the overuse of discretionary exemptions, saw it as a major problem that needed to be addressed.  It's conceptually a major change, no doubt about it, from permissive, whenever the document falls within the scope of the exemption, government doesn't have carte blanche. They have to make a further justification. But that doesn't necessarily mean that we're talking about a huge number of documents. That doesn't necessarily mean that the nature and extent of the burden of justification on the government is something wholly different in kind from what they normally do in FOIA cases. It just means that they have to go the extra step and say, is the purpose of the exemption satisfied by withholding? They have to identify a purpose, a specific purpose that they believe reasonably, objectively reasonably, would be harmed by disclosure, and then they have to tie that, they have to link that to the specific information at issue here. So I think with respect to the two blitz forms that we're talking about here, I don't think it's our position that those blitz forms in general, and I think this is what the declaration goes to, blitz forms in general may fall within the scope of the deliberative process privilege and may in certain circumstances the government may be able to demonstrate that the foreseeable harm requirement is met. I think they didn't do that in this case, and that is the issue. And they can't do that on a categorical basis. And I would just point to the court because I think it would be helpful to the court. We noted that there have been no court of appeals decisions interpreting the foreseeable harm provision. There have been some district court decisions since AMICI filed its brief. There have been two additional district court decisions addressing the foreseeable harm provision within the context of the deliberative process privilege, one from Chief Judge Howell and one from Judge Kohler-Catelli. We have the Westlaw site, so I can give those to you in case they're helpful. The first is Judicial Watch, Inc., against Department of Justice, 2019, Westlaw 4644029. That's a September 24, 2019, decision from Judge Kohler-Catelli. And then Center for Investigative Reporting against U.S. Customs and Border Protection, 2019, Westlaw 7372663. That's a December 31, 2019, decision from Chief Judge Howell. In both cases, rejecting the government's showing of foreseeable harm as sufficient. I would note that in the Judicial Watch case, there was a declaration from Ms. Brinkman, quite similar in language, that Judge Kohler-Catelli found insufficient on foreseeable harm. I think we largely agree with the way the district courts generally, maybe not Judge McFadden in this case, but generally have been interpreting the burden that is placed on agencies. What else would you have them do? And they file the affidavit, which talks about disclosure of the information at issue, at issue, in the case. And they say it would severely hamper the efficient day-to-day workings of the attorneys. And they explain why that's true. And it is not only unsurprising, but necessarily true that the explanation for why that is the case is linked directly to the purpose of the exemption, which is to make sure that the government can get candid legal advice. I think respectfully, Your Honor, I look at the Brinkman Declaration provisions that were cited by Judge McFadden, and I think that they actually speak to blitz forms generally. And the argument that is being presented is that these are subject to the deliberative process privilege, and therefore they would, of course, necessarily, if they were disclosed, harm an interest to be protected by the deliberative process privilege. It's a circular argument. It would render the foreseeable harm provision a nullity in the context of Exemption 5, where it's clear that Congress wanted it to do work particularly in Exemption 5. And so I think here what I would say is the specific information. I mean, just as a matter of how they frame this, they say disclosure of information at issue, which seems to be focused on. I would say read it in context, that it's talking about blitz forms. It talks about discussion, for example, between supervising attorneys and the attorneys that fill out the blitz form. Well, if you look at the two blitz forms at issue here, there's no back and forth. There's no supervising attorney comments or discussion. And, in fact, the recommendation that is redacted, it looks to be a one- or two-word recommendation. So if the argument that OIP is making is that it would harm the deliberative process privilege to release a statement by an attorney that says recommendation remand to agency, recommendation affirmed, I think that that cuts directly or runs directly against what Congress was attempting to do with the foreseeable harm provision. I mean, I understand what you're saying, but it seems to me that the only way the agency can satisfy the foreseeable harm requirement is to give detail that makes this something other than a more or less, not more or less, a completely mundane example of the deliberative process privilege. I think that there is the obligation. It is a meaningful, it is an independent burden that's been placed on the agency. The agency does have an obligation to provide some level of detail sufficient for the court de novo to review the foreseeable harm finding that was made by the agency. Could you give an example? I think the blitz forms here are actually a good example. And we don't necessarily... That's because of what's missing, right? It's because of what is, well, I think what is redacted. And again, I'm not taking the position that the agency cannot meet this burden. I'm saying the agency did not meet this burden because it did not tie the harms that it said, that are sought to be protected by the deliberative process privilege. It did not tie any specific harm to the specific redacted information here. It talked about blitz forms generally. But does that mean that it has to show in some way that this deliberative process information is non-ritualistic? I mean, it's sort of silly when a bureaucratic ritual becomes encased in preservation. But on the other hand, as soon as you go beyond that, as you require more, it's hard to see how you do it without getting into the substance of the information not to be disclosed. I think that the agency can provide, through declarations, through bond indices, and other manners as they do when they establish that exemptions apply, can provide additional information that would allow the court to objectively determine whether they, in fact, reasonably foresee harm from disclosure of this information. I think a lot of the ritualistic sort of mundane, everyday information, I think what Congress intended was, in fact, that that would not be redacted. That we wouldn't be having to worry about what showing the agency would make for mundane information, because that would be disclosed. That's the purpose of the foreseeable harm provision, is to mandate disclosure unless, frankly, there's actually a need for this information to be withheld. And then in those cases, I think it isn't difficult, or shouldn't be difficult, for the agency to articulate why this specific information in this form or in this document is different, and we need to withhold this, because it would harm our publicity. Without disclosing the information, which is to prevent disclosure. They should be able to do that, and to the extent they can't, because the district court can always review documents in camera within its discretion if it feels it needs to to conduct a de novo review. But I think it is certainly possible, and agencies do it routinely with respect to withholdings, explain their rationale. And they get no weight out of the fact that the category, the kind of information at issue here, which is legal advice given by subordinate lawyers to government lawyers up the chain about legal and strategic issues regarding how to handle a legal issue, right? What to do with a FOIA request. They get no mileage out of the obvious sensitivity of that issue. It's right in the heartland of deliberative process. Well, I think you're assuming, Your Honor, that it is in fact that kind of information that's been redacted, and the government hasn't attempted to say that that's what it is. And I would actually point the court to the Coastal States case that's cited by the government. It is not a foreseeable harm case, because it was decided in 1980 by this court, which is obviously decades before the foreseeable harm provision. But, in fact, the court concluded that the deliberative process privilege did not apply to attorney memoranda that were provided more or less on a routine basis to auditors in the Department of Energy's field offices. That was secret law. It was a secret law case, that's true. But it is the case the government relies on, Your Honor, to demonstrate that the deliberative process is placed. Right. It is the only case that the government cites in its brief on the issue of the foreseeable harm provision. All right. Thank you. Thank you, Your Honors. We'll hear from the government. Whaley-Shaw for the government. May it please the Court. I'd like to start with Amiki's contentions. I would submit to this Court that this case really does not provide an occasion for this Court to define the minimum standard of what agencies must provide to satisfy either FOIA exemption 5 directly or to satisfy the 2016 amendments to FOIA. What OIP did here in defending its withholdings is really exemplary of what agencies should be doing to defend those exemptions. I mean, fortunately, it had the benefit of only having two records before it, and certainly there are cases in which agencies have, you know, there are many, many more records involved and agencies aren't able to devote the same level of attention to any withholdings. But in this case, OIP did exactly, it looked to exactly the kinds of factors that this Court has recognized as speaking to whether withholding the privilege and including the factors that are discussed in the Coastal States Gas Corp case. So really, any question of whether there's some, to Judge Katz's question of whether there's some distance between what agencies were doing before and whether, you know, there are sort of additional requirements posed by the 2016 amendments really isn't presented because on either standard, what the agency did is sufficient. I'd also like to turn briefly to some of the contentions raised by plaintiff. And I think one of the chief complaints that plaintiff has is that there were not certain e-mails that were turned up in the State Department's and DEA's searches for records. So because he argues, for example, that because the State Department searched by case number, that that wasn't adequate to turn up any e-mails. I think the search was adequate for the reasons that are explained in our brief, and there's no reason to expect that there are other e-mails that would exist that would have been responsive to plaintiff's request. I just want to point out that, first of all, that the one example that plaintiff gives is an e-mail from his counsel to the State Department, which was expressly excluded from the scope of his search and, in fact, was turned up in the search anyway because State Department had added the case number. But second, that... What about DEA? Yes. How do you answer the point that the existence of this database might not comprehensively pick up all documents, all responsive documents, even if it might pick up many? Right. The question before the Court is not whether there might be some other record that, you know, was not included in this database. The question is whether the search was adequate, whether it was reasonably calculated to locate all responsive records. And we have an express declaration that says exactly that. It says that all responsive information was reasonably likely to be included in this system and that records are retrieved from the system by, among other things, case number. In fact, they located the file. And I would just point out that among the records that DEA actually retrieved from the system is an e-mail from plaintiff's counsel, and that was produced as part of the production of records. So there's no reason to think that e-mails were somehow categorically excluded, and there's no reason to doubt the DEA's declaration that all responsive records would have reasonably been included. Do you understand our case is basically to place a burden on the requester that once the declaration comes in in the form, it came in here, then it is up to the requester to suggest that during the request or during the informal back and forth it indicated some other likely source? In other words, in other cases we've had situations where there have been suggestions that there might be e-mails somewhere else, and in those cases the representation has been made on the record that the agency either explained why that was not likely or, indeed, that they had looked there and not found anything. Right. And I think the agency effectively did that here. It said all responsive information was reasonably likely to be included in the system. That doesn't the fact that there might be another system that also includes responsive records isn't sufficient to make the search inadequate so long as Who knows there might be another system where these responsive records might be found? That's what I'm getting at. If the agency knows there is another system, then isn't there some obligation, particularly after 2016, to search there? Well, the question is certainly the agency has understanding and expertise as to the content of its own systems, and this Court has frequently relied That wasn't my question. That wasn't my question. It has, quote, a comprehensive system. All right? But it also knows that there could be some responsive e-mails elsewhere. Right. The question is We said a reasonable search, not a perfect search, but if the agency knows, and I thought counsel's point was the agency here hasn't said anything like, well, not only is this comprehensive, but we don't know of any other place that these e-mails might be. Right. The fact that there might be responsive records located elsewhere is not dispositive. Under Mobley, the question is whether those responsive records are likely to be duplicative of records that were already retrieved from the system that was, in fact, searched. So in fact So my hypothetical is the agency knows there are other e-mails that are not duplicative, that are not within this, quote, comprehensive file. Right. Does the agency have any obligation post-2016 to indicate that? I'm not sure that the 2016 amendments speak to this question. Well, I'm trying to understand what Congress had in mind. Right. All right? We have said in other cases, if the agency knows, let's start to assure the requester that it's looked and there's nothing there that's relevant. I think if an agency knows that there are responsive records located in a location that has not been searched, then the agency has an obligation to search in that location. I don't think that the 2016 amendments have affected that obligation. So you don't even think the 2016 amendment requires the agency to say, not only do we have this comprehensive system, but we know of no other place that responsive documents are likely to be found? I think in terms of defending the adequacy of the agency's search, the obligations on the agency are the same now as they were before. So 2016 made no difference? What the 26 amendments did was they spoke to the standards that agencies would have to meet in justifying withholdings of records under certain exemptions, and that I think is analytically a separate issue from the question of the adequacy of the search. And so the government, you know, we certainly agree with the need. So you think Congress wasn't concerned about adequacy? Congress may have been concerned about adequacy, but they did not speak to that issue through this particular statute. What do you think the 2016 amendment was all about? Well, it was about a number of things, but specifically the issue that had been raised by Meeke. Meeke was saying this is a law enforcement record. It's not disclosing it, period. Right. I think the issue that Meeke has principally been discussing, at least, is a perceived overuse of exemptions and overwithholding of documents. And specifically what Congress said that it was doing was that it sought to preserve a executive branch policy that was in place since 2009, and it said, the legislative history says quite expressly, that it wanted to preserve that standard against future changes in administrations and reduce possible confusion both to FOIA processors and FOIA requesters. And so, again, I think that issue is entirely separate from the question of, you know, whether the agency search in this case was adequate. So then I don't understand what Congress had in mind. Why am I in the statute? Well, Congress very clearly did at least two things that changed the state of the law. One is it took an executive branch policy and codified it into statute, which means- Okay. But we all remember, I trust, and you would have better than I, that when Holder issued that, that was a change, all right? And the agencies were supposed to be more responsive and to disclose more. So that's why I'm trying to understand what are the practical effect of this? Because you know as well as I do that this court, the agency files these declarations, either the district court or we remand for more specificity. You know, that's almost standard operating procedure. Or the agency responds initially and says, we don't find anything, and then the plaintiff files the complaint in court, and all of a sudden the agency looks further and it finds something. Right. So the practical effects are, again, to codify this into statute and also make this requirement enforceable in a FOIA action, which is exactly what we have before the court. So those are two very concrete differences in the law after the 2016 amendments. So I guess I don't agree with the contention that somehow that doing those two things was, you know, is superfluous. I'm open to any more questions, but if the court has none, we ask that the district court judgment be affirmed. Thank you. Thank you, Your Honor. I'm going to briefly respond to a lot of what was said after I stopped talking last time. From our perspective, and this may be a point where we diverge a little bit from the amici, is that we actually agree in large part with the DOJ that this isn't necessarily the place for the court to decide, you know, how can an agency meet the foreseeable harm standard. The only thing that you need to decide is that they haven't done it here. And that whatever it is. I'm sure that that vote completely avoids the first issue. Yes, right. That is, that puts it back in the fact finder's hands to. Yes, but to say that implies at a minimum a benchmark of what would be sufficient. Correct. And which is something more than this. And that would be helpful. And the thing that the big over-exemption that a lot of people on the Hill were talking about, and a lot of people in the public were talking about when the amendments were being considered, was this idea of a chilling effect. Because before 2016, an agency could get summary judgment on a deliberative process privilege claim by saying that people are chilled who work in fishbowls because fishbowls are chilly. And 2016 comes along and the OIP has taken the position that, okay, well, we can't say that fishbowls are chilly. We have to say that OIP attorneys are chilled by the prospect of working in a fishbowl because fishbowls are chilly. That is not a significant change. And to the question that was asked by Judge Rogers, I apologize, the sort of underlying intention of 2016 for foreseeable harm was that there has to be something. Congress, we cannot presume that Congress made a law to memorialize what everybody was already doing legally. There has to be something they meant to change. And the only way that you can find that there was something they meant to change would be to add a particularized idea. They have to explain why disclosure in a particular case advances the purpose of the underlying exemption. And that doesn't seem like it's. Disclosure of these records. Yeah. Or of this information. And this sort of gets to the idea of you were asking for some hypos about, you know, what would be picked up by foreseeable harm that wasn't picked up before? And I would use the example of you have this, you assumed, because the agency said so, that this was legal advice. I actually would hotly contest that it was legal advice because there was no evidence whatsoever that it was not adopted, hook, line, and sinker, and rendered as a matter of agency practice the final decision. And the fact that it happened to go from a junior to a senior. I don't understand that. Pardon me? I don't understand that why it would be inconsistent or incompatible where the declaration says it was legal advice. Because it becomes a final agency decision if they act on it. And the fact that Vanessa Brinkman did not write the memo but instead said, yeah, whatever, and stamped it doesn't make it any less of a final agency decision. It's a very persuasive subordinate giving advice. Right. What else does it show besides that? And if a persuasive subordinate gives advice that is adopted by the agency as an agency policy or an agency action, it becomes not covered by the liberal process privilege because it is a statement of agency, it is a final decision. And the only exception to that is if. Well, that would be true, I guess, if the persuaded official said precisely for the reasons stated below I adopt the recommendation. And that gets to the specific nature of these records, these blitz forms. And I mentioned this in my reply where I said, you know, you can't say that the search that they did, I'm going to say, I'm going to affirm the search because it's Friday or because. We understand that counsel. And so. We have a declaration here saying this is legal advice. And you want us to look behind that statement, correct? Yes. Yes, Your Honor. So it's not legal advice. And we have all these decisions saying that the declaration basically is to be taken as true, absent some evidence of bad faith or misrepresentation. Your Honor, that is only part of it without due respect. What is the rest of it? Why don't you wrap up, counsel? Okay. The. A declaration that is lacking on its face cannot be relied on for summary judgment. Absent any other evidence that I may or may not have. All right. What else? Honestly, I think that this is a fairly straightforward case. And I stand behind all of the arguments I made in my brief and adopt the amicable arguments. Thank you very much.
judges: Rogers, Katsas, Williams